

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin 1, Texas

Dear Sir:

Opinion No. O-5974
Re: Transportation of liquor
to military reservations
situated in dry areas,
and related questions.

In Oklahoma it is made unlawful "to import, bring, transport, or cause to be brought or transported into the State" any intoxicating liquor for beverage purposes. Oklahoma Statutes (1941), Title 37, Section 41.

Fort Sill is a military reservation located in the state. The individual members of an officers' club on the reservation, through its secretary, ordered 225 cases of liquors from Illinois. The liquors were consigned to the club secretary at Fort Sill and were transported by a common carrier motor vehicle through the states of Illinois and Missouri into Oklahoma, where its movement was momentarily stopped at Oklahoma City. At this point the liquors were seized by state liquor law enforcement officials.

The motor carrier filed a complaint in Federal District Court alleging that the seizure was an unlawful interference with an authorized interstate transportation and prayed for an order requiring its return for delivery to the consignee. The District Court ordered its return to the carrier and restrained further interference with the shipment, and its action was affirmed by the Circuit Court. Johnson, et al., vs. Yellow Cab Transit Co., 48 Fed. Supp. 594; affirmed 137 Fed. (2d) 274.

On March 13, 1944, the Supreme Court of the United States upheld the action of the District Court. That court said one issue was, "did transportation of the liquors

through Oklahoma violate that state's law so as to justify
their seizure?" Johnson v. Yellow Cab Transit Co., 88 Law
Ed. 553.

Its answer to this question turned upon a condi-
tion that does not exist under the Texas law. The Oklahoma
statute, to use the court's expression, provides that "no
permit to transport liquor into Oklahoma can be obtained
at all except for scientific, mechanical, medicinal, indus-
trial or sacramental purposes." Stated in another way, the
prohibition against the importation of liquor for beverage
purposes into the territorial limits of that state is ab-
solute.

Since "Oklahoma ceded to the United States in 1913
whatever authority it ever could have exercised in the Reserv-
ation," it followed as a matter of law "that the general
power to govern the Fort Sill area is vested in the United
States, not in Oklahoma." Consequently, the court found
that there was no justification for the seizure.

The other issue, declared the court, was, "should
the District Court have denied the carrier equitable relief
because of the 'unclean hands' doctrine, even though the
seizure of the liquors by the officials was illegal?"

It resolved the issue with this language:

"If the carrier's delivery of these liquors
on the Fort Sill Reservation would violate any
federal law, federal agencies exist which are
charged with responsibilities to institute appro-
priate proceedings against the carrier in federal
tribunals. In such proceedings the parties would
be the United States and the carrier, and the is-
sue of violation of federal laws would be direct-
ly, and not collaterally, presented. The compli-
cated federal questions involved, concerning
various federal statutes as well as Army rules
and regulations, could be answered upon an ade-
quate presentation of all factors essential to a
right and just determination.

"And, similarly, if the several hundred Army
Officers who ordered and paid for these liquors

have acted contrary to United States Statutes, Army Regulations, or Orders of the Post Commandant, it is not to be doubted that the Army or some other United States agency is capable of determining what course shall be pursued. And it can do so at such time and place as will least hamper essential military training at Fort Sill. If the United States should proceed in the matter, the Army Officials would be heard before they would be stigmatized as law breakers and subjected as such to Army discipline. . . ."

Now, with the opinion of the Supreme Court in mind, you cite the following Texas statutes:

"Sub-sections (16) and (18), Section 17, Article I, of the Texas Liquor Control Act provide as follows:

"'(16). It shall be unlawful for any carrier to import into this state and deliver any liquor to any person not authorized to import the same, or to transport and deliver liquor to any person in a dry area in this State, unless the same be for a lawful purpose as provided in this Act.'

"'(18). It shall be unlawful for any person to import or to transport into this state from any place outside the state any liquor, in excess of one (1) quart, in containers to which have not been affixed proper state tax stamps, consigned to, intended for delivery to, or being transported to any person or place located within the state boundaries, unless the same shall be consigned to the holder of a Wholesalers' Permit authorizing the sale of such liquor and at his place of business.'"

You ask us to rule on the following questions:

"1. Is it a violation of the Texas Liquor Control Act for a Common Carrier to transport liquor, as defined by Texas law, to an army camp, post or reservation situated in a dry area in

Honorable Bert Ford, page 4

Texas when such liquor is consigned to an individual, either acting alone or for a collective group of individuals, who may have previously ordered the delivery of such liquor on or within such areas?

"2. Would there be any distinction as to the legal question involving such Federally occupied areas whether or not police jurisdiction had been ceded by the State of Texas to the United States Government?"

The distinction between the Oklahoma and Texas statutes is obvious. It is the distinction between absolute prohibition on the one hand and reasonable regulation on the other. Oklahoma attempted to preempt a field over which it had no jurisdiction in the first instance. Had its statute been allowed the literal meaning of its terms, federal and military regulation on the same subject would have been precluded. It was this vice that denied the exertion of state power.

Texas, on the other hand, does not prohibit but regulates the importation of liquor for beverage purposes. Had a situation like that in Oklahoma arisen under Texas law the liquor sought by the Army Officers could have been obtained in a lawful way in this state. The individuals, for example, could have purchased the same in a wet area and carried it to the reservation. If its sale had been legal on a military reservation, those authorized to sell the same thereon could have purchased the liquor from wholesalers in this state and had it lawfully transported to such reservation for that purpose. There is no need to labor this point nor would it serve any good purpose to detail the various provisions of the Texas Liquor Control Act making liquor available for beverage purposes to persons in this State. The facts are that those qualified under the law to drink it can get it. The question is fully discussed and explained in our opinion No. O-4438, herewith enclosed.

Since we have concluded that the Texas regulatory law is a reasonable one and is not subject to the criticisms levelled at the Oklahoma Act by the Supreme Court of the United States, it is our opinion that persons on military

Honorable Bert Ford, page 5

reservations in this State must be governed by its terms. We rule, therefore, that it is not permissible for a common carrier to transport liquor to an army camp or reservation situated in a dry area on the order either of an individual, whether acting for himself or for others. We think such a transportation would be unlawful regardless of whether Texas has ceded jurisdiction of the military area to the United States.

While we think these answers to your general questions are correct, it may be that particular fact situations could arise where some conflict between federal or military regulations and state law would exist. In such event the matter will be considered in the light of the particular facts.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Elbert Hooper*

Elbert Hooper
Assistant

EH:db

Enclosure

*Blackburn*
Acting ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN